# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| **TINA MICHELLE CHANDLER,** | ) |  |
| 1720 East Bancroft Lane | ) |  |
| Crofton, MD 21114 | ) |  |
|  | ) |  |
| Plaintiff | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. _____ |
|  | ) |  |
| **BEN S. BERNANKE,** | ) |  |
| **CHAIRMAN OF THE BOARD OF** | ) |  |
| **GOVERNORS OF THE** | ) |  |
| **FEDERAL RESERVE SYSTEM,** | ) |  |
| 20th and Constitution Avenue, N.W. | ) |  |
| Washington, D.C. 20551 | ) |  |
|  | ) |  |
| Defendant. | ) |  |

_____)

## COMPLAINT

**COMES NOW** the Plaintiff, TINA CHANDLER, by and through her undersigned

counsel, and pursuant to Title VII of the Civil Rights Act of 1964,  42 U.S.C. § 2000e, *et*

*seq.* (hereinafter "Title VII"), the Age Discrimination in Employment Act of 1967, 29

U.S.C. § 633a, *et seq*. ("hereinafter ADEA"), and the Family and Medical Leave Act of

1993, 29 U.S.C. § 2601, *et seq.*,  submits this Complaint against the named Defendant

and/or the Board of Governors of the Federal Reserve System, and states as follows:

## STATEMENT OF PARTIES

1.    Plaintiff Chandler is an African-American employed by Defendant, Ben S. Bernanke, Chairman of The Board of Governors of the Federal Reserve System (hereinafter the "Board"), in his official capacity.  Plaintiff was employed by Defendant as a Staff Assistant (FR-35) from her hiring in 1998 until November 6, 2006 at its Washington, D.C. office.  Plaintiff was born on December 20, 1957 and resides in Crofton, MD.

2.    Defendant Ben S. Bernanke is Chairman of the Board of Governors of the Federal Reserve System, a United States government agency, headquartered at 20th Street and Constitution Ave., N.W. Washington, DC  20551.

## STATEMENT OF JURISDICTION AND VENUE

3.    This Court has jurisdiction over this action under 42 U.S.C. § 2000e-5(f)(3),  29 U.S.C. § 633a(c), and 29 U.S.C. § 2601, *et seq.*.  This action presents federal questions under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, as amended.  This action also presents federal questions under the Age Discrimination in Employment Act 1967, 29 U.S.C. § 633a, *et seq.*, as amended.  Further, the case also presents federal questions under the Family and Medical Leave  Act of 1993, 29 U.S.C. § 2601, *et seq.*  Plaintiff filed a formal Complaint with the EEO Office of the Board of Governors of the Federal Reserve System which was denied according to the Notice of Final Agency Decision dated September 8, 2006.

4.      Venue is proper in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28

U.S.C. § 1391(e)(1) and (2).  All the Plaintiff's claims arose in Washington, D.C.,

and many of the acts complained of herein occurred in this District and gave rise

to the claims alleged.  Defendant operates its headquarters in Washington, D.C.

where it employs thousands of workers.


**NATURE OF THE ACTION**

5.      Plaintiff Chandler alleges that Defendant employer violated Title VII and ADEA

by discriminating against her on the basis of retaliation, age, and race/color.

Plaintiff alleges that Defendant employer retaliated against her for having

previously filed an equal employment opportunity complaint.   Plaintiff further

alleges that Defendant employer discriminated against her on the basis of age and

race/color.  Plaintiff alleges that Defendant employer also violated the Family and

Medical Leave Act of 1993 by interfering with her right to take leave, when she

needed to do so in relation to her health, some of her health condition caused by

the discriminatory conduct of Defendant's employees.


6.      As a result of Defendant's discrimination against her, Plaintiff has suffered

physical, emotional, and financial injuries which continue to persist and are

expected to continue for the rest of her life.

# STATEMENT OF FACTS

7.      On or about 1998, Plaintiff was hired by Defendant in a position of Staff Assistant at grade level FR-35 reporting to Jack Dennis, Assistant Director for the Division of Reserve Bank Operations and Payment Systems (hereinafter "RBOPS") at the Board of Governors of the Federal Reserve System..

8.      In about 2000, Earl Hamilton was an Assistant Director for the Division of RBOPS.

9.      Earl Hamilton is an African-American.

10.     In about 2000, Jack Dennis was an Assistant Director for the Division of RBOPS.

11.     Jack Dennis is an African-American.

13.     In about 2000 Louise Roseman took work from Earl Hamilton and gave it to Paul Bettge.

14.     Louise Roseman is Caucasian/white.

15.     Paul Bettge is Caucasian/white.

16.     In about 2000, Earl Hamilton filed a lawsuit against the Board alleging Title VII race discrimination with failure to promote by Louise Roseman, Director for the Division of RBOPS.

17.     Earl Hamilton's suit against the Board was settled and Earl Hamilton left the Board.

18.     In about 2000, Jack Dennis filed a lawsuit against the Board alleging Title VII race discrimination with failure to promote by Louise Roseman, Director for the Division of RBOPS.

19.    Jack Dennis's suit against the Board was settled and Jack Dennis retired from the Board.

20.    After Hamilton and Dennis left the Board, Louise Rosaman promoted Paul Bettge to Associate Director of the Division of RBOPS.

21.    In about 1999 Plaintiff received an "outstanding" performance evaluation from Jack Dennis.

22.    In about 2000 Plaintiff received an "outstanding" performance evaluation from Jack Dennis.

23.    In about 2000, Jack Dennis, recommended that Plaintiff receive a promotion to Staff Assistant grade level FR-36.

24.    In about 2000, Plaintiff's promotion to Staff Assistant grade level R-36 was denied by Louise Roseman.

25.    In about 2000, Louise Roseman changed Plaintiff's promotion evaluation from "outstanding" to "commendable."

26.    In 2000, Plaintiff notified the EEO Office at the Board that she was going to file an EEO complaint of not being promoted due to discrimination.

27.    Plaintiff trained Nicole Addison-Waters in performing duties of  Staff Assistant.

28.    Between the time that Plaintiff notified the EEO Office at the Board that she was going to file a  Complaint and the time that she filed the complaint, Nicole Addison-Waters was  promoted to Staff Assistant at grade level FR-35.

29.    On or about December 13, 2000, Plaintiff filed a formal complaint of equal employment opportunity discrimination with the EEO Office of the Board of

Governors of the Federal Reserve System alleging race discrimination by Louise Roseman.

30.    On or about January 5, 2001, Louise Roseman sent an email to the EEO Office at the Board stating that Plaintiff would be leaving the Division of RBOPS and going to DCCA and telling the EEO Office to find another position for Plaintiff at a lower grade level.

31.    Plaintiff was informed by the EEO Office that Louise Roseman no longer wanted her in her Division.

32.    Early in 2001, projects that Plaintiff was working on were taken from her and given to other workers.

33.    Jo Chang falsely told Plaintiff that the reason the Survey of the Banks was taken from her and given to Kevin Davis was that there was an error.

34.    In early 2001, the Audit Activity Reports were taken from her and given to Ken Todd.

35.    Plaintiff's December 2000 discrimination complaint was resolved by a Settlement Agreement signed on April 2, 2001.

36.    The Settlement Agreement provided that Plaintiff's 1999-2000 performance evaluation ("PMP"), rating her as "commendable," would be replaced with one rating her "outstanding" for that performance period.

37.    The settlement agreement provided that if Plaintiff believed the terms of the agreement were violated, that she should notify the Board's EEO Programs Director within 30 days of the violation.

38.     Plaintiff had no reason to believe that the terms of the agreement were not and would not be complied with until 2005.

39.     Contrary to the Settlement Agreement terms, Louise Roseman, Division Director at the Board, did not replace in Plaintiff's personnel file the "commendable" PMP for that period with the "outstanding" PMP.

40.     In about 2001, Bud Martindale was placed in the position of Assistant Director for RBOPS that was previously occupied by Jack Dennis.

41.     Plaintiff received "outstanding" performance evaluations from Bud Martindale for the years 2001, 2002, and 2003.

42.     Plaintiff did not receive the promotion to her sought-after grade level of FR-36 in either 2001, 2002, or 2003.

43.     Bud Martindale frequently yelled from his office at Plaintiff for the duration of his tenure in the position of Assistant Director for RBOPS.  This offensive and harassing conduct was heard and observed by other workers and people in Plaintiff's work environment.

44.     In about August 2004, Bud Martindale left his position of Assistant Director for RBOPS.

45.     The position of Director for RBOPS previously occupied by Jack Dennis followed by Bud Martindale and to which Plaintiff reported was vacant from the time Martindale left in 2004 until the middle of 2006.

46.     Since the summer of 2004, Plaintiff has reported to Paul W. Bettge, Associate Director for RBOPS.

47.     Plaintiff assisted the Oversight Coordination and Audit Review sections, rather than any particular individual, with various projects, including the Bank Evaluation Project for the Oversight Section and the Joint Meeting of Audit Committee Chairs and General Auditors Conference for the Audit Review Section.

48.     Mr. Bettge is over forty years of age and Caucasian/white.

49.     Jeannine Szostek is over forty years of age, Caucasian/white, and Manager of Oversight Coordination.

50.     Jo Chang is over forty years of age, Chinese-American, and Manager of Audit Review.

51.     Mr. Bettge is responsible for evaluating Plaintiff's performance through the Board's Performance Management Program (PMP), and seeks the input for this evaluation from Jeannine Szostek and Jo Chang.

52.     Without a supervisor, Plaintiff was subject to more severe hostility and harassment in her work place.

53.     Jeannine Szostek is a friend of Louise Roseman.

54.     Jeannine Szostek was Plaintiff's manager in 2000.

51.     Jeannine Szostek knew that Plaintiff had filed an EEO complaint in 2000.

52.     Jeannine Szostek spoke only indirectly to Plaintiff through other personnel in order to give her work assignments.

53.     In about 2004, Jeannine gave everyone except Plaintiff a cash award for a Bank Evaluation Project that Plaintiff and other award recipients had worked on.

54.    In the summer of 2005 Jo Chang would repeatedly ask Plaintiff, "Why don't you apply for other jobs?"

55.    In the summer of 2005 Jo Chang would repeatedly ask Plaintiff, in a disparaging manner, "What do you want to do with your life?"

56.    In or around the fall of 2005, Plaintiff was denied promotion to Staff Assistant at the grade level of FR-36.

57.    On or about September 8, 2005, Jo Chang wrongfully and humiliatingly yelled at Plaintiff and scolded her.

58.    In about September 2005, Plaintiff was initially informed that she would attend a RBOPS Division climate survey meeting.

59.    In or about September of 2005 Plaintiff commented about lack of promotion on a climate survey of the Division of RBOPS.

60.    On or about October 12, 2005, Plaintiff was prohibited from attending the Division climate survey meeting, which she had earlier been notified that she was to attend.

61.    On or about October 17, 2005, Plaintiff notified the EEO Office at the Board that she was going to file an EEO complaint.

62.    Among her employment activities, Plaintiff trained Lakisha Tabscott in performance of the duties of a Staff Assistant.

63.    Between the time that Plaintiff notified the EEO Office that she was going to file a complaint and the time she filed the formal complaint, Lakisha Tabscott was promoted to a Staff Assistant at grade level FR-36.

64.    The individual and collective actions of Defendant's employees, Louise Roseman, Bud Martingdale, Jo Chang, and Jeannine Szostek created a hostile workplace for Plaintiff by repeatedly embarrassing, humiliating, manipulating her in her workplace environment, and arbitrarily denying her the promotion which she deserved.

65.    Plaintiff remained at the Grade RF-35 level that she was hired at for over seven years, including five and one-half years beyond the time of settlement of her previous 2000 EEO Complaint.

66.    Plaintiff was subjected to a pattern of harassment, abuse, hostility in her workplace, and withdrawal of assignments in retaliation for her previous filing of the EEO complaint in 2000, that progressed to the extent that it made her workplace intolerable for her.

67.    Plaintiff is fully qualified for a full FR-36 grade, and the work assignments of that grade level.

68.    Plaintiff has received numerous positive comments on her work performance including a letter from Anna M. Wong of the Federal Reserve Bank of Boston dated July 29, 2002.

69.    Plaintiff received cash awards of $1,000 and $500, and a letter from the Board dated August 1, 2002 for her  contributions in organizing the Joint Meeting of Audit Committee Chairs and  General Auditors, and the subsequent Conference of General Auditors meeting.

70.    Despite Plaintiff's qualifications and performance leading to positive comments and awards, Plaintiff's work performance has been repeatedly under-evaluated

within her workplace division, thereby depriving her and preventing her promotion to the said grade FR-36.

71.    Plaintiff has been evaluated at a level lower than her actual level of performance and, thereby, prevented from obtaining a well-deserved promotion to the FR-36 grade although women who are younger than Plaintiff, who Plaintiff trained in skills required to perform their duties, and who were given some of Plaintiff's tasks have received promotions when Plaintiff has not..

72.    Plaintiff trained Nicole Addison-Waters and Lakisha Tabscott, both in their mid-twenties, to do some of Plaintiff's tasks.

73.    Plaintiff filed a second EEO complaint on or about January 3, 2006.

74.    After Plaintiff filed the second EEO complaint, none of her managers communicated with her for some time.

75.    Greaux & Associates conducted an investigation relative to Plaintiff's second EEO complaint.

76.    After the Investigation of Greaux & Associates, RBOPS underwent a reorganization.

77.    After the investigation of Greaux & Associates, Jeannine Szostek was moved out of her previous position in RBOPS.

78.    After filing her second EEO complaint, Plaintiff initially stayed on the job and did her work daily, in spite of the presence of hostility.

79.    During 2006, Jo Chang continued to harass Plaintiff.

80.    Plaintiff was experiencing severe emotional distress and physical pain and mental anguish from stress due to events at her workplace.

81.  Dr. Carroll gave Ms. Chandler a referral to see a psychiatrist for anxiety and chronic pain.

82.  Dr. Curiel recommended that Plaintiff see a psychiatrist for post-traumatic stress syndrome and fibromyalgia.

83.  Prior to June 27, 2006, the Board refused to accommodate Plaintiff's need for time off to obtain medical care for workplace-induced illness.

84.  Plaintiff was experiencing generalized aches and pains, fatigue, and trigger points consistent with fibromyalgia and was diagnosed with post-traumatic stress syndrome and having flashbacks. These medical disorders were induced by the described events at her workplace.

85   Dr. Curiel diagnosed patient as having fibromyalgia and post-traumatic stress syndrome.

86.  On or about June 7, 2006 Dr. Curiel completed, signed, and dated a Certification of Health Care Provider form stating, "Patient will have to take work only intermittently," "Patient is presently incapacitated.  Will require psychiatric care before working full time," "Patient will have to take time off from work until her condition improves," and "Patient unable to perform any of her duties at present time."

87.  On or about June 7, 2006 Plaintiff submitted the form from Dr. Curiel to the Board  in her application for Family and Medical Leave Act leave  ("FMLA").

88.  On June 14, 2006 Michael J. Horan, M.D. recommended to Employee Relations of the Board that Plaintiff be granted her request for 6-8 weeks of retroactive FMLA.

89.     On June 27, 2006, Chris Fields notified Plaintiff that she would be granted up to 12 weeks (480 hours) of unpaid leave from June 7, 2006 through June 6, 2007 for the medical condition addressed in her documentation to use on an intermittent basis to leave work to attend appointments with her therapist due to post traumatic stress disorder.

90.     Plaintiff needed time off from work continuously until her condition improved rather than time off intermittently.

91.     On or about July 24, 2006 while Plaintiff was typing, Jo Chang rapidly moved toward Plaintiff from her side and thrust her hand in front of Plaintiff's face with gummy bears in her hand and commanded Plaintiff to "eat it."

92.     Plaintiff felt that her personal space was invaded and felt like she needed to protect herself by moving Jo Chang's hand away from her, but refrained from doing so.

93.     On or about July 24, 2006, Plaintiff went to the EEO office and reported the incident with Jo Chang thrusting herself into Plaintiff's personal space.

94.     On or about July 24, 2006, on the same date, Plaintiff went to the Employee Relations office and reported the incident with Jo Chang thrusting herself into Plaintiff's personal space.

95.     On or about July 26, 2006 Plaintiff called Greg Evans and left a voice mail message reporting Jo Chang's conduct in thrusting herself into Plaintiff's personal space.

96.     The gummy bear incident with Jo Chang was not written up by either the EEO Office or the Employee Relations office.

97.  Plaintiff heard no response from Greg Evans relevant to the incident with Jo Chang until she received a memorandum from him on or about August 18, 2006 in which he expressed concern over the safety of the workplace in Plaintiff's presence, which did not properly address Plaintiff's position.

98.  On or about August 18, 2006 Plaintiff also received a letter from Christine M. Fields, Assistant Director of the Board, expressing concern about Plaintiff's ability to perform the functions of her job without endangering her safety or that of others

99.  In the August 18, 2006 letter from Christine Fields to Plaintiff, Christine Fields notified Plaintiff that '[she] would not have access to the building until the matter of [her] ability to safely perform [her] job has been resolved."  Obviously, this was not properly addressing Plaintiff's ongoing harassment and improper treatment in her workplace.

100.  On or about September 18 and 21, 2006, Plaintiff underwent psychiatric evaluation by a psychiatrist designated by the Board.

101.  On or about October 18, 2006 Plaintiff received a letter from Christine Fields informing her that Dr. Kleinman's conclusion was that she was fit for duty, that her administrative leave would end on October 18, 2006, and that she was expected to return to work on October 19, 2006.

102.  Attached to the October 18, 2006 letter from Christine Fields to Plaintiff was a letter dated October 3, 2006 from Dr. Carol Kleinman to Christine M. Fields in which  Dr. Kleinman stated, "Ms. Chandler, in my view, very likely does suffer from a psychiatric disorder that prevents her from safely performing her work for

the Board at this time" and recommended that she consult a psychiatrist, take

benzodiazepine to relieve anxiety, perhaps take a Selective Serotonin Reuptake

Inhibitor, undergo Cognitive-Behavioral Therapy, and return to work after some

time.

103.    Also attached to the October 18, letter from Christine Fields to Plaintiff was a

letter dated October 16, 2006 from Dr. Kleinman to Christine Fields in which Dr.

Kleinman stated, "in my opinion, to a reasonable degree of medical certainty,

Ms. Chandler is safe to return to work.  She is not a violent person."

104.    In the letter dated October 3, 2006 from Dr. Kleinman to Christine Fields,  Dr.

Kleinman also wrote,  "[i]t seems that her managers have not responded early

enough to the problems in their department, until they got so out of hand that Ms.

Chandler exploded and made her complaints known."

105.    As a result of the discriminatory actions and hostilities perpetrated on Plaintiff by

her Defendant employer, Plaintiff has endured embarrassment, humiliation, and

emotional injury.

106.    As a result of the discriminatory actions and hostilities perpetrated on Plaintiff by

her employer, Defendant, Plaintiff has endured physical injury.

107.    As a result of the discriminatory actions and hostilities perpetrated on Plaintiff by

her employer, Defendant, Plaintiff has been forced to miss work. She did not have

enough sick time to cover the time she needed to take off and was forced to miss

three weeks of work without pay.

108.    As a result of the discriminatory actions and hostilities perpetrated on Plaintiff by

her employer, Defendant, Plaintiff's personal life has also suffered.

109.   As a result of the discriminatory actions and hostilities perpetrated on Plaintiff by her employer, Defendant, Plaintiff has suffered financial injuries

110.   Many of Plaintiff's symptoms of her injuries persist and have adversely affected her personal and professional life and are expected to continue for the rest of her life.

111.   With advice from her doctor Plaintiff felt compelled to remove herself from the work scene inasmuch as her employer would not grant her the necessary continuous leave as prescribed by Dr. Curiel to tend to her medical condition that resulted from the stress and injury associated with the harassment of Plaintiff and her hostile work environment.


## COUNT I – VIOLATION OF TITLE VII -RETALIATION

112.   Plaintiff Chandler incorporates and adopts paragraphs 1-111 above in support hereof and further sets forth the following.

113.   On or about December 13, 2000 Plaintiff engaged in protected activity by filing an equal employment opportunity complaint against her employer, Defendant, the Board, in which she alleged that the Board was discriminating against her by denying her promotion due to her race.  The complaint was settled on or about April 2, 2001

114.   Repeatedly over about the past eight years Plaintiff has been subject to adverse actions by her employer as aforesaid, including being denied a deserved promotion and thereby being denied a higher salary.

115.   The adverse retaliatory actions to which Plaintiff has been subjected are directly a result of Plaintiff having previously filed an equal employment opportunity complaint.

116.   As a direct result of Defendant's violation of Title III by retaliating against Plaintiff, Plaintiff has suffered damages as alleged hereinabove.

## COUNT II – VIOLATION OF TITLE VII - RACE DISCRIMINATION

117.   Plaintiff Chandler incorporates and adopts paragraphs 1-116 above in support hereof and further sets forth the following.

118.   Plaintiff is a person of color and an African-American.

119.   Plaintiff has been denied a deserved promotion repeatedly each year since 2000.

120.   Plaintiff has been subjected to a hostile work environment.

121.   As a direct result of Defendant's violation of Title III by race discrimination against Plaintiff, Plaintiff has suffered damages as alleged hereinabove.

## COUNT III – VIOLATION OF ADEA– AGE DISCRIMINATION

122.   Plaintiff Chandler incorporates  and adopts paragraphs 1-121 above in support hereof and further sets forth the following.

123.   Plaintiff is over 40 years of age.

124.   Plaintiff has sought a promotion to Staff Assistant Grade FR-36 every year since 2000.

125.   Plaintiff has been and is qualified for a position of Staff Assistant Grade FR-36.

126.  Plaintiff has been denied promotion to a position of Staff Assistant Grade FR-36 every year since 2000.

127.  Plaintiff trained Lakisha Tapscott and Nicole Addison-Waters to perform the duties of a Staff Assistant.

128.  Lakisha Tapscott was about 26 years old in 2004.

129.  Nicole Addison-Waters was about 28 years old in 2004.

130.  At the same time that Plaintiff was denied promotion to FR-36 Staff Assistant, Lakisha Tapscott was promoted to grade level FR-36 Staff Assistant.

131.  At the same time that Plaintiff was denied promotion to FR-36 Staff Assistant, Nicole Addison-Waters was promoted to grade level FR-36 Staff Assistant.

132.  Plaintiff was similarly situated to Lakisha Tabscott in that they were both Staff Assistants at Grade level FR-35.

133.  Plaintiff was similarly situated to Nicole Addison-Waters in that they were both Staff Assistants at Grade level FR-35.

134.  As a direct result of Defendant's violation of ADEA by age discrimination against Plaintiff, Plaintiff has suffered damages as alleged hereinabove.

## COUNT IV – VIOLATION OF FAMILY AND MEDICAL LEAVE ACT – INTERFERENCE WITH RIGHT TO TAKE LEAVE

135.  Plaintiff Chandler incorporates and adopts paragraphs 1-134 above in support hereof and further sets forth the following.

136.  In relation to the discriminatory practices visited upon her, Plaintiff has sustained an emotional/psychiatric disorder.

136.  Plaintiff's condition was a serious health condition requiring continuing medical treatment.

137.  Plaintiff gave appropriate notice of her need to be absent from work for the stated purposes.

138.  Defendant interfered with the exercise of Plaintiff's right to unpaid leave by requiring Plaintiff to return to work when the Defendant's designated psychiatrist informed Defendant that she need ongoing medical care and treatment for her disorder; and otherwise deprived her of her right to receive needed medical attention; and recovery from her medical disorders.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for relief as follows:

A.      Damages and equitable relief for all harm the Plaintiff has sustained as a result of Defendant's conduct including back pay for years 2000-2006 for the FR-36 position to which she was entitled; payment of salary for the next 16 years until her expected retirement, education expenses, full retirement pay, and general and special damages for lost compensation and job benefits that she would have received but for the discriminatory practices of Defendant; compensatory damages for emotional distress and medical disorders and racial discrimination, mental anguish, and pain and suffering, in the amount of $ 2,000,000;

B.      Exemplary and punitive damages in an amount commensurate with Defendant's ability to pay and to deter future discriminatory conduct; in the form of a judgment against Defendant for $ 1,000,000.

19

C.      An award of Plaintiff's attorney fees, costs, and interest on the judgment amounts from the date of the award thereof until satisfied at the judgment rate, and any other relief the court deems appropriate;

D.      A preliminary and permanent injunction against Defendant and its directors, officers, agents, successors, employees, and representatives, and any and all persons acting in concert with it, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

E.      A declaratory judgment that the practices complained of in this complaint are unlawful and violate 42 U.S.C. § 2000(e), *et seq.*, Title VII of the Civil Rights Act of 1964, Age Discrimination in Employment Act of 1967, and/or Family and Medical Leave Act of 1993;

F.      An order retiring Plaintiff at her rightful position of Staff Assistant FR-36;

G.      An order adjusting the wages rates and benefits for Plaintiff to that level which Plaintiff would be enjoying but for Defendant's discriminatory practices.

H.      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.


## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

    /S/
    David W. Buckley #210898
    Deso & Buckley, PC
    1828 L Street, N.W., Ste. 660
    Washington, D.C. 20036
    Telephone:    (202) 822-6333

Facsimile:     (202) 822-6665
Counsel for Plaintiff


 /S/ _____
B.G. Stephenson
B.G. STEPHENSON, LTD.
4157 Chain Bridge Road
Fairfax, VA 22030
Telephone:     (703) 591-2470
Facsimile:     (703) 359-0638
Of Counsel for Plaintiff

21

JS-44
(Rev.1/05 DC)

**I (a) PLAINTIFFS**

Tina Michelle Chandler

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
**(EXCEPT IN U.S. PLAINTIFF CASES)** 88888

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
David W. Buckley, Esq., Deso& Buckley,PC
1828 L. Street, N.W., Ste. 660
Washington, D.C.

**DEFENDANTS**

Ben S. Bernanke, Chairman of the Board of
Governors of the Federal Reserve System
COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 11001
**(IN U.S. PLAINTIFF CASES ONLY)**
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
TRACT OF LAND INVOLVED

CASE NUMBER 1:06CV02082

JUDGE: Emmet G. Sullivan

DECK TYPE: Employment Discrimination

DATE STAMP: 12/6/2006

**JURY ACTION**

**II. BASIS OF JURISDICTION**

(PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☒ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in item III)

**III CITIZENSHIP OF PRINCIPAL PARTIES**
FOR PLAINTIFF

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CASE ASSIGNMENT AND NATURE OF SUIT**
**(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)**

**☐ A. Antitrust**

☐ 410 Antitrust

**☐ B. Personal Injury/ Malpractice**

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

**☐ C. Administrative Agency Review**

☐ 151 Medicare Act

**Social Security:**
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

**Other Statutes**
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**☐ D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**☐ E. General Civil (Other) OR ☐ F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ☐ G. Habeas Corpus/ 2255 | ☒ H. Employment Discrimination | ☐ I. FOIA/PRIVACY ACT | ☐ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General ☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) *(If pro se, select this deck)* | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) *(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ☐ K. Labor/ERISA (non-employment) | ☐ L. Other Civil Rights (non-employment) | ☐ M. Contract | ☐ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act ☐ 720 Labor/Mgmt. Relations ☐ 730 Labor/Mgmt. Reporting & Disclosure Act ☐ 740 Labor Railway Act ☐ 790 Other Labor Litigation ☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act) ☐ 443 Housing/Accommodations ☐ 444 Welfare ☐ 440 Other Civil Rights ☐ 445 American w/Disabilities-Employment ☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance ☐ 120 Marine ☐ 130 Miller Act ☐ 140 Negotiable Instrument ☐ 150 Recovery of Overpayment & Enforcement of Judgment ☐ 153 Recovery of Overpayment of Veteran's Benefits ☐ 160 Stockholder's Suits ☐ 190 Other Contracts ☐ 195 Contract Product Liability ☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ Multi district Litigation  ☐ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)** FMLA
42 U.S.C. s.2000e, et seq. (Title VII); 29 U.S.C. s.633a, et seq. ADEA; 29 U.S.C. s.2601, et seq.

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** 3,000,000 | Check YES only if demanded in complaint **JURY DEMAND:** ☒ YES  ☐ NO |
|---|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    ☐ YES  ☒ NO    If yes, please complete related case form.

DATE  12/6/06    SIGNATURE OF ATTORNEY OF RECORD  *David W. Beckley*

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.    CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.    CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.    CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.    RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

N:\forms\js-44.wpd