IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
TINA M. CHANDLER,              )
      Plaintiff,               )     Civil Action No. 1:06-2082 (EGS)
v.                             )
                               )
BEN S. BERNANKE,               )
CHAIRMAN OF THE BOARD          )
OF GOVERNORS OF THE            )
FEDERAL RESERVE SYSTEM,        )
      Defendant.               )
_____)
```

**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

In this Title VII and ADEA action, defendant Board of Governors of the Federal Reserve System (the "Board") moved to dismiss for lack of subject matter jurisdiction or for failure to state a claim as to portions of the complaint and for summary judgment as to the entire complaint. In the Board's Motion To Dismiss And For Summary Judgment ("Motion"), we showed that several of the allegations in plaintiff's case should be dismissed because they are barred by the terms of an agreement between plaintiff and the Board that settled a prior EEO complaint (the "Settlement Agreement"). We then showed that many of plaintiff's claims of discrete acts of discrimination and retaliation must be dismissed because plaintiff did not timely exhaust her administrative remedies in regard to those claims. For the remaining claims that were not time barred – plaintiff's non-promotion in 2005 and her hostile work environment claim – we showed that plaintiff cannot make a prima facie showing of discrimination or retaliation. Specifically, we established that plaintiff cannot show that she did not receive a promotion for which

she was qualified, nor can she show conduct that was connected to a prohibited basis or sufficiently severe or pervasive to be actionable harassment.  Finally, we showed that plaintiff's claim under the Family and Medical Leave Act ("FMLA") must be dismissed because the FMLA does not provide a private cause of action for federal government employees with more than 12 months of service.

In her Memorandum Of Points And Authorities In Opposition To The Board's Motion ("Opposition"), plaintiff concedes or fails to address substantively every one of defendant's arguments.  She does not contest the Board's argument that claims related to events occurring before the Settlement Agreement are barred by the terms of the Settlement Agreement.  Regarding claims of discrimination and retaliation that plaintiff did not timely exhaust, plaintiff argues, without legal support, that she can evade the administrative exhaustion requirements simply by alleging that these events occurred in retaliation for the administrative complaint that she settled over six years ago.

Regarding plaintiff's substantive claims of discrimination, retaliation, and hostile work environment, plaintiff merely repeats the unsupported allegations in her complaint – and adds some new allegations – but she fails to raise any genuine issue of material fact.  Plaintiff's Statement of Genuine Issues of Material Fact ("plaintiff's Statement") fails to comply with Local Rule 7(h) because she does not support any of her assertions with references to the record or other evidence.  Moreover, plaintiff does not address our showing that she cannot establish a prima facie case of discrimination, retaliation, or hostile work environment harassment.

Finally, plaintiff's argument regarding her FMLA claim amounts to no more than a plea that this Court ignore the statutory language and settled case law.  Because none of

plaintiff's arguments provides a basis for continuing this action, the Board's Motion should be granted.

## ARGUMENT

### I. PLAINTIFF DOES NOT CONTEST THE BOARD'S ARGUMENT THAT CLAIMS ARISING BEFORE THE SETTLEMENT AGREEMENT ARE BARRED.

In her Opposition, plaintiff concedes that in the Settlement Agreement she agreed to "waive all issues that were the subject of the complaint and issues that have arisen between the time of filing of the formal EEO complaint and the date of the Settlement Agreement." Opp. at 10. Accordingly, all claims of discrimination or retaliation that occurred before April 2, 2001, up to and including paragraph 34 of plaintiff's complaint, and including the alleged denial of promotion in 2000, should be dismissed, as there is no dispute that plaintiff waived these claims.[1]

### II. PLAINTIFF CANNOT EVADE THE REQUIREMENT FOR ADMINISTRATIVE EXHAUSTION BY CLAIMING HER PRESENT ALLEGATIONS ARE RELATED TO HER SETTLED ADMINISTRATIVE COMPLAINT.

Plaintiff commenced the administrative process that is the subject of the present action on October 17, 2005. As we showed in our Motion, all of plaintiff's claims related to discrete acts that occurred more than 45 days before this date (i.e., before September 2, 2005) are time barred because plaintiff did not timely exhaust the administrative process for these claims. Motion at 15-16. These include allegations that plaintiff was denied promotions from 2001 to 2004 and was denied a cash award in 2004. Id.

---

[1] We agree with plaintiff's assertion that the Settlement Agreement does not bar claims that arose after the date of the Settlement Agreement, Opp. at 10. However, as discussed below and in our Motion, most of these claims are nonetheless barred for failure to timely exhaust administrative remedies. Motion at 15-16.

3

In her Opposition, plaintiff claims that she was not required to exhaust administrative remedies for these discrete acts because these acts allegedly occurred in retaliation for her administrative claim that was settled in 2001 (her "settled administrative complaint").  Opp. at 10-11.  Citing Harrison v. Rubin, 174 F.3d 249 (D.C. Cir. 1999) and Jones v. Greenspan, 402 F. Supp. 2d 294 (D.D.C. 2005), plaintiff asserts that she is not required to exhaust administrative remedies for a retaliation claim.  Opp. at 11-12.  Plaintiff also argues that the U.S. Supreme Court's decision in National Railroad Passenger Corp. v Morgan, 536 U.S. 101 (2002), is inapplicable to the present case because Morgan did not address whether "subsequent discriminatory or retaliatory acts," (i.e., acts that occurred after the initial complaint) required administrative exhaustion.  Opp. at 12.

Plaintiff's argument does not withstand scrutiny, and her cases are inapposite.  First, in Morgan and most recently in Ledbetter v. Goodyear Tire and Rubber Co., ___ U.S. ___, 2007 WL 1528298 (slip op. May 29, 2007), the Supreme Court has made abundantly clear that every discrete act that forms the basis of a federal court complaint – whether that claim is one of discrimination or retaliation – must comply with administrative exhaustion requirements.  Morgan, after all, involved discrete claims of retaliation as well as of discrimination, and the Supreme Court dealt with them in one breath:  "A discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'  A party, therefore, must file a charge within [the applicable filing period from] the date of the act or lose the ability to recover for it."  536 U.S. at 110.  In Ledbetter, the Court reemphasized the importance of compliance with statutory filing deadlines, holding that in the case of alleged serial violations, "a timely EEOC charge

4

must be filed with respect to each discrete alleged violation." Ledbetter, Slip op. at 20. Neither of these cases suggests that retaliation claims that post-date the filing of a complaint need not be exhausted, and numerous cases following Morgan have rejected that argument. See, e.g., Prince v. Rice, 453 F. Supp. 2d 14, 23-24 (D.C.C. 2006); Romero-Ostolaza v. Ridge, 370 F. Supp. 2d 139, 148-50 (D.D.C. 2005); Coleman-Adebayo v. Leavitt, 326 F. Supp. 2d 132, 138 (D.D.C. 2004), amended in part on other grounds, 400 F. Supp. 2d 257 (D.D.C. 2005); Bowie v. Ashcroft, 283 F. Supp. 2d 25, 33-35 (D.D.C. 2003).

Moreover, even if that issue could still be considered an open one in some circumstances, it would not help plaintiff here. Even the cases that she cites do not support her position that she can raise in federal court unexhausted claims of retaliation for a complaint that was long-since settled. Harrison, which was decided before Morgan, holds only that retaliation claims that post-date the filing of the particular administrative case that forms the basis of the federal court's jurisdiction may be raised in the civil action without administrative exhaustion. It makes clear, in fact, that claims of retaliation in response to settled claims must be separately exhausted. Harrison involved a claim that plaintiff suffered an assault in retaliation for bringing an administrative complaint that was itself assertedly barred by a prior settlement agreement. The D.C. Circuit ruled only that if the claims raised in the administrative complaint were not barred by the settlement – that is, if the court had jurisdiction over the substantive claims raised by the plaintiff – then the plaintiff could also proceed with her allegation of post-settlement retaliatory assault without exhausting administrative remedies. 174 F.3d at 418. In this case, of course, plaintiff's claims that pre-date the Settlement Agreement are barred, as

5

plaintiff herself acknowledges, so any retaliation claim based on the raising of those settled claims would, consistent with Harrison, have to be separately exhausted.

Jones is similarly unhelpful to plaintiff. In that case, the plaintiff sought to raise in federal court a retaliation claim that allegedly arose in response to the administrative complaint that formed the basis of his federal court action. The court, citing only to a previous opinion by the same judge and without consideration of Morgan, ruled that such claims need not be separately exhausted. Even if this view were correct, which it is not, it would not permit plaintiff here to bring an unexhausted retaliation claim tied to her settled claim from 2001, because that settled claim does not and cannot form the basis of her current federal complaint. 42 U.S.C. § 2000e-16(c) (complainant has 90 days from final agency action or, in the absence of such action, 180 days from the filing of an administrative complaint to bring a civil action in federal court).

Here, plaintiff initiated the administrative process that forms the basis for the present action on October 17, 2005,[2] which means that the timely filing period commenced on September 2, 2005, well after the discrete acts of alleged retaliation at issue (i.e., her "denied" promotions from 2001 through 2004 and her "denied" cash award in 2004). Those claims are therefore barred.

Not only does plaintiff's attempted reliance on her settled administrative complaint to evade exhaustion requirements lack legal support, it is also contrary to plaintiff's own arguments. In her Opposition, plaintiff refers to the discrete acts occurring before September 2005 only in the context of her claims of discrimination, not

---

[2] Plaintiff's Complaint identifies this administrative complaint, which was the subject of a final agency decision on September 8, 2006, as the jurisdictional basis of the present complaint. Complaint ¶ 3.

retaliation.  See Opp. at 14 (referring in her argument regarding discrimination claims to denials of promotion for her entire tenure and the denial of a cash award); Opp. at 15-16 (referring in her argument regarding retaliation claims only to incidents that occurred in September 2005 or later).  Even if plaintiff's argument that retaliation claims do not require exhaustion were correct, plaintiff cannot raise otherwise untimely claims of discrimination simply by attaching the label of "retaliation" whenever she finds it convenient.  Cf. Jeffers v. Chao, 2004 U.S. Dist. LEXIS 27541 at *19 (D.D.C. 2004) ("[t]he mere allegation of retaliation is not a panacea, allowing plaintiffs to circumvent the statutory framework of Title VII").

### III. PLAINTIFF HAS FAILED TO SHOW THERE IS A GENUINE ISSUE OF MATERIAL FACT REGARDING HER CLAIMS OF DISCRIMINATION, RETALIATION, AND A HOSTILE WORK ENVIRONMENT.

In order to survive summary judgment, plaintiff must produce admissible, factual evidence demonstrating the existence of a genuine issue of material fact that is in dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986).  Plaintiff has failed to do so, relying on unsupported allegations and conclusory statements regarding her claims of discrimination on the basis of age, color, race, or retaliation, and for her claim of hostile work environment harassment.  Plaintiff asserts that summary judgment is premature solely because discovery has not commenced.  Opp. at 13.  But courts routinely grant summary judgment before discovery has commenced where, as here, the nonmoving party fails to present any genuine issues of material fact for trial.  See, e.g., Price v. Greenspan, 374 F. Supp. 2d 177 (D.D.C. 2005), aff'd, 470 F.3d 384 (D.C. Cir. 2006); Raymond v. U.S. Capitol Police Bd, 157 F. Supp. 2d 50, 55 (D.D.C. 2001).  Plaintiff has neither provided any evidence that creates a genuine issue of material fact nor indicated

7

what facts she could discover that could create a triable issue.  See Carpenter v. Fed. Nat'l Mortgage Ass'n, 174 F.3d 231, 237 (D.C. Cir. 1999) (affirming summary judgment for employer over plaintiff's request for discovery where plaintiff offered no reasonable basis that discovery would show the existence of material facts to support her claim).

Not only has plaintiff failed to provide any evidence that creates a genuine issue of material fact, plaintiff provides hardly any evidence at all.  Plaintiff attaches only six exhibits to her Opposition, three of which the Board already submitted in its Motion, and none of which creates a genuine issue of material fact.  Moreover, plaintiff's Statement merely repeats the allegations made in her unverified complaint, and does not include a single reference to the record that was developed during the administrative investigation, nor to any supporting affidavits or other competent evidence setting forth specific facts showing there is a genuine issue for trial.  Plaintiff has thus failed to comply both with Fed. R. Civ. P. 56(e) (requiring party opposing a motion for summary judgment to submit "affidavits . . . made on personal knowledge" or other evidence setting forth "specific facts showing that there is a genuine issue for trial") and with Local Rule 7(h), which requires party opposing summary judgment to submit "a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."   Accordingly, the court may treat the Board's Statement of Material Facts as admitted.  Local Rule 7(h); Hayslett v. Perry, 332 F. Supp. 2d 93, 98 (D.D.C. 2004) (treating as conceded all facts "not specifically controverted by competent evidence" submitted by plaintiff, citing Waterhouse v. District of Columbia, 298 F.3d 989, 992 (D.C. Cir. 2002)).

8

A. <u>Discrimination</u>

As noted above, the Board's Motion showed that plaintiff cannot make a prima facie case of discrimination for her failure to promote in 2005 – the only allegation of discrimination in her complaint that was not time barred – because the evidence the Board presented established that plaintiff was not qualified for the Senior Staff Assistant position she sought. In her Opposition, plaintiff has not raised any genuine issue of material fact to refute the Board's showing, and this claim should be considered conceded. <u>Hayslett</u>, 332 F. Supp. 2d at 98.

In particular, the Board provided specific facts – through both the job description and RBOPS policy – showing that the Senior Staff Assistants had more complex responsibilities and job knowledge requirements, and that only Staff Assistants who were "consistently performing at a level that exceeds the expectations for full performance of his or her job family" could be considered for a promotion to Senior Staff Assistant. Motion at 17-18. We then demonstrated, through comments in plaintiff's performance evaluations and observations by managers, that plaintiff's performance did not meet this high standard, and she was therefore not qualified for the position. Motion at 18-20.

Plaintiff fails to dispute any of the Board's facts demonstrating that she was not qualified. Instead, plaintiff lists several "facts" – which are almost entirely unsupported – that she argues support her claim of discrimination. Some of these in no way relate to her 2005 failure to promote claim.[3]  Opp. at 14-15. Plaintiff also merely repeats the

---

[3] These allegations include being denied an award in 2004, being subjected to yelling and offensive conduct, having work "withdrawn" from her, and receiving a performance evaluation with false statements. Opp. at 14-15. To the extent that plaintiff contends that these are additional discrete acts of discrimination, they are all subject to dismissal for failure to exhaust administrative remedies. Both the award denial and the alleged

9

unsupported assertion that she was qualified because she had received performance evaluations of "outstanding" in the past, she had performed assignments at the FR-36 grade level, she had trained other Staff Assistants, and she had received positive comments about her work performance. Opp. at 14. To the extent these assertions are not supported by any evidence, they are insufficient to create a disputed issue of material fact.

Plaintiff provides evidence only for her last assertion, attaching to her Opposition two letters from colleagues commending her for work she had done on two discrete projects. Opp. Exs. 2 and 3. These letters, however, do not create a genuine issue of material fact because, even assuming their accuracy, they cannot establish whether plaintiff was qualified for the Senior Staff Assistant position. Dobbs v. Roche, 329 F. Supp. 2d 33, 39 (D.D.C. 2004) (a "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action; citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson, 477 U.S. at 248). The letters do not, for example, address plaintiff's ability to handle any of the enhanced responsibilities of a Senior Staff Assistant, such as writing briefing memoranda, preparing reports, and collecting information for Reserve Bank examinations and reviews, Motion at 17 (comparing Motion Ex. L, Staff Assistant Job Description, to

---

offensive conduct occurred more than 45 days before plaintiff initiated the administrative process that led to this civil action. Neither the allegations of a withdrawal of work assignments nor the negative performance evaluation – which occurred in 2006 – were part of plaintiff's 2006 administrative claim on which she bases this civil action; indeed, plaintiff introduced the issue of the 2006 performance evaluation for the first time in this Opposition. These claims have therefore not been exhausted. Even if plaintiff could raise these claims, plaintiff fails to state how these acts were in any way connected to her age, race, or color, much less provide specific evidence that gives rise to an inference of discrimination.

Motion Ex. M, Senior Staff Assistant Job Description), nor do they address plaintiff's overall performance in her job. In fact, plaintiff's Opposition includes even more evidence that she was unqualified for the position because plaintiff admits that she was inexperienced doing work in an accounting position. Opp. at 6; Motion Ex. M (stating that Senior Staff Assistants are required to have "an understanding of basic accounting").

Similarly, the Board provided evidence showing that the two employees who did receive promotions to Senior Staff Assistant, Lakisha Tapscott and Nichole Addison-Waters, were not similarly situated to plaintiff. Specifically, we showed that they had a different supervisor than plaintiff and that their performance records far exceeded that of plaintiff. Motion at 20-22. Plaintiff has not disputed this showing. Instead, plaintiff only asserts only that she "trained" Ms. Tapscot and Ms. Addison-Waters, Opp. at 14, an allegation that, even if she could support with evidence, cannot demonstrate that plaintiff was similarly situated to these employees or that she was qualified for the Senior Staff Assistant position. Plaintiff has made no showing that would otherwise create an inference of discrimination, and has thus failed to refute the Board's showing that she cannot make out a prima facie case of discrimination with regard to her failure to promote claim.

B.   Retaliation

Plaintiff's retaliation claim in her complaint alleges only retaliation in response to her settled administrative complaint that plaintiff initiated in 2000. Opp. at 9; Complaint at ¶¶ 113-115. In our Motion, we showed that plaintiff could not establish a prima facie case of retaliation based on her settled administrative complaint because the time gap between her 2005 promotion – the only discrete act that she timely raised – and her

11

settled administrative complaint was too large to establish a causal connection between the two. Motion at 22. Plaintiff's Opposition implicitly concedes this point. Opp. at 16 (citing Clark v. County School Dist. Breeden, 532 U.S. 268, 273 (2001), which notes that a three- or four- month period between an adverse action and protected activity is insufficient to show a causal connection).

In response, plaintiff has decided to switch horses in midstream and argue in her Opposition only that various alleged adverse actions were taken against her in retaliation for her January 2006 formal administrative complaint. Opp. at 16. This claim appears nowhere in plaintiff's complaint; therefore, it should not be considered. See Richardson v. Guttierez, 477 F. Supp. 2d 22, 27 (D.D.C. 2007) (refusing to consider a new claim of retaliation based on a protected activity mentioned for the first time in plaintiff's opposition because plaintiff had failed to raise a claim of retaliation based on that alleged activity in her complaint).

Even if plaintiff were to amend her complaint to include these claims, the claims should be dismissed for a number of reasons. First, plaintiff has commenced, but has not exhausted, the administrative process for a claim of retaliation based on her 2006 administrative complaint; thus, these claims are not ripe for judicial action.[4] Following Morgan, it is clear that these discrete claims must be exhausted prior to suit in federal court. See Prince, 453 F. Supp. 2d at 23-24, and cases cited at p. 5, supra.

---

[4] Plaintiff initiated this most recent administrative claim on January 24, 2007, see Exhibit 1 hereto, so the 180-day period for administrative exhaustion has not yet run. See 42 U.S.C. § 2000e-16(c) (permitting a civil action to be filed "after one hundred and eighty days from the filing of the initial charge" with the agency). Accordingly, these claims are not yet ripe for judicial action. Marshall v. James, 276 F. Supp. 2d 41, 58 (D.D.C. 2003).

12

Even if these claims were properly exhausted, however, plaintiff cannot establish a prima facie case of retaliation for her 2006 administrative complaint since, once again, plaintiff has failed to provide any factual support for her allegations. Moreover, even according to plaintiff's own allegations, almost all of the incidents that she claims were retaliatory occurred five months or more after she filed her formal administrative complaint of discrimination in January 2006. Opp. at 16-17 (alleging that plaintiff was reassigned to the accounting section in June 2006 and subsequently had work withdrawn from her; that her administrative leave, which lasted from August 18 through October 18, 2006, was retaliatory; and that she was given a poor performance review).[5] As plaintiff herself acknowledges, a time span of five months is insufficient to show a causal connection. Opp. at 16 (citing Breeden, 532 U.S. at 273, which notes that a three- or four- month period between an adverse action and protected activity is insufficient to show a causal connection). Other than these allegations, plaintiff claims only that her managers "abnormally refrained from communicating with her" following her formal complaint. Opp. at 16. Plaintiff's complaint, however, indicates that she believed this was a long-standing pattern by her supervisors, not one that resulted from her 2006 administrative complaint. See Complaint ¶ 52 (second).[6]

---

[5] The January 2007 administrative complaint, Exhibit 1 hereto, makes clear that this performance review was provided to plaintiff after she returned to work in October 2006. See Exhibit 1 at 4 (plaintiff "was requested to return back to work on October 19, 2006. After returning back to work and receiving her PMP [performance review] . . . ."

[6] Plaintiff also states that "within a very short period of time" after filing her 2006 administrative complaint, she was also "denied promotions." Opp. at 17. Plaintiff's own Opposition, however, makes clear that she believed her denied 2005 promotion occurred before she initiated her 2006 administrative complaint. Opp. at 16 (stating that plaintiff was denied promotion in 2005 and then notified the EEO office that she intended to file an administrative complaint) (emphasis added). Plaintiff does not allege that she made a

C.   Hostile Work Environment

In our Motion, we showed that even if every allegation that plaintiff had included in her complaint were true, she cannot establish a prima facie case of hostile work environment harassment based on race (the only basis upon which she alleged a hostile work environment in her complaint).  We showed that plaintiff could not connect any of the alleged events to her race, and that in any case the events she alleged did not describe an atmosphere "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  Motion at 25 (citing Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 78 (1998)).  Apart from repeating, without evidentiary support, her allegations of harassment, plaintiff's Opposition does nothing to address the deficiencies of her claim identified in the Board's Motion.  Opp. at 18.  Accordingly, this claim must be conceded.

**IV.   THE PLAIN LANGUAGE OF THE FMLA REQUIRES DISMISSAL OF HER CLAIM FOR INTERFERENCE WITH MEDICAL LEAVE.**

As we stated in our Motion, and as the plaintiff expressly concedes, Opp. at 19, courts have interpreted the FMLA as not providing a private right of action for federal employees who have been employed over twelve months.  Motion at 28.  Regardless of plaintiff's view of the "intent" of the statute, Opp. at 19, suits against the federal government are barred by sovereign immunity absent an unequivocal waiver of this immunity.  Lane v. Pena, 518 U.S. 187, 192 (1996); U.S. v. Mitchell, 463 U.S. 206, 212 (1983).  The FMLA contains no such explicit waiver for permanent federal employees like plaintiff; therefore, this claim must be dismissed.

---

subsequent request for promotion in 2006.

**CONCLUSION**

Plaintiff concedes that claims arising before the Settlement Agreement are barred, and she has failed to show why her untimely claims of discrimination and retaliation should not be dismissed for failure to exhaust her administrative remedies.  Plaintiff has similarly failed to make any showing of a genuine issue of material fact for her remaining claims of discrimination, retaliation, and a hostile work environment.  Finally, plaintiff's FMLA claim must be dismissed because the federal government has not waived its sovereign immunity from such claims.  Accordingly, the Board's Motion to Dismiss And For Summary Judgment should be granted.

DATED:  June 1, 2007

                                      <u>s/ Katherine H. Wheatley</u>
                                      Katherine H. Wheatley
                                      (Bar No. 359037)
                                      Associate General Counsel

                                      John L. Kuray
                                      Senior Counsel

                                      Sara L. Stainback
                                      Senior Attorney

                                      Board of Governors of
                                      the Federal Reserve System
                                      20th & C Streets, N.W.
                                      Washington, D.C.  20551
                                      (202) 452-3779

                                      Counsel for Defendant
                                      Ben S. Bernanke, Chairman of the Board
                                      of Governors of the Federal Reserve System

Rec'd
1/29/07

## B. G. STEPHENSON, LTD.
ATTORNEYS AND COUNSELORS AT LAW
INNS OF COURT
4157 CHAIN BRIDGE ROAD
FAIRFAX, VIRGINIA 22030
U.S.A.

(703) 591-2470

B.G. STEPHENSON*
WILLIS P. LANIER III

*ALSO ADMITTED TO NY BAR

TELEFAX: (703) 359-0638

**January 24, 2007**

Ms. Sheila Clark
Equal Employment Opportunity Programs Director
Federal Reserve Board
Washington, D.C. 20551

**RE: Complaint of Discrimination of Tina Michelle Chandler**

Dear Ms. Clark:

    Transmitted herewith is the formal Complaint of Discrimination and Retaliation of Tina Michelle Chandler dated January 24, 2007 as compiled by Complainant. This is a further Complaint that follows Ms. Chandler's prior complaint of Discrimination and Retaliatory conduct at her workplace.

    The undersigned counsel represents her in this matter. Please advise the undersigned counsel of all actions taken and any additional submittals which should be made on her behalf in support of this Complaint.

B.G. STEPHENSON, LTD.

B.G. Stephenson

Enclosures

**Complaint of Discrimination**
At the Board of Governors of the Federal Reserve System
Because of Race, Color, Religion, Sex, Age, National Origin,
Disability, Equal Pay or Retaliation

Board of Governor of the
Federal Reserve System
Washington, DC 20551

FRB-EEO-07-01-001

For Board Use
Please type or print. See reverse side for instructions

| | |
|---|---|
| 1. Full name of complainant<br>Tina Michelle Chandler | 2. Telephone number, including area code<br>301-261-3149<br>Home ( )         Work ( ) |
| Street address (or post office box number)<br>1720 East Bancroft Lane<br>Crofton, MD 21114<br>City     State     Zip Code | 3. Are you now working for the Board?<br>☐ Yes, (answer A, B, C and D below)<br>☐ No, (continue with question 5)<br>A. Division |
| 4. Name of division(s) in which the complaint arose<br><br>RBOPS | B. Section and stop number<br>Accounting 193<br>C. Title            D. Grade<br>Staff Assistant    FR 35 |

5. Date on which most recent alleged discrimination took place:
   Month     Day     Year

6. What do you think is the basis for the alleged discrimination?

☒ RACE          If so, state your race           _____
☒ COLOR         If so, state your color          _____
☐ RELIGION      If so, state your religion       _____
☐ SEX           If so, state your sex            _____
☒ AGE           If so, state your age            _____
☐ NATIONAL ORIGIN  If so, state your national origin _____
☐ DISABILITY    If so, state your disability     _____
☒ RETALIATION   If so, state form of retaliation _____
☐ CLASS COMPLAINT  If so, state personnel policy or practice which led to discrimination _____
                class members affected           _____

Complaints of discrimination because of age apply only to employees or applicants who are at least age 40 at the time of discriminatory action is alleged to have occurred.

7. Explain how you believe you were discriminated against (treated differently from other employees or applicants) because of your race, color, religion, sex, age national origin, disability or form of retaliation. For each allegation, please state to the best of your ability, information, and belief what occurred and when. If additional space is needed, use separate sheet.

    SEE ATTACHED

| | |
|---|---|
| 8. a) Have you discussed your complaint with an EEO Counselor? (See instructions)<br>☒ Yes   ☐ No | b) Name of EEO Counselor<br>Johanna Bruce<br>c) Date of Final Interview<br>January 10, 2007 |

9. Name and Address of your representative in this complaint, if applicable

   B.G. Stephenson, 4157 Chain Bridge Road, Fairfax, VA 22030

10. What corrective action are you seeking?

    To be declared retired and to be paid her expected salary and benefits for the remaining years of employment until at least 65 years of age.

| 11. Date of this complaint:<br>Month 1   Day 24   Year 2007 | 12. Signature of Complainant<br>*[signature]* |
|---|---|

FR 1413 (2/97)

## Tina Michelle Chandler
## Complaint of Discrimination and Retaliation

This complaint is being filed in response to the August 18, 2006 letter from Mr. Chris Fields and Mr. Gregory Evans and also in response to Dr. Carol C. Kleinman's letter dated October 16, 2006.

In the letter dated August 18, 2006, Mr. Evans made reference to an incident regarding Complainant pointing my finger at Ms. Bonnie Abbott several months prior to his letter. This incident never took place. This alleged incident contributed to Complainant being placed on administrative leave from August 8, 2006 through October 18, 2006. Complainant asked Mr. Evans while discussing Complainant's performance review (PMP) on November 2, 2006 why he did not bring this subject matter to her attention before his August 18th memo. Mr. Evan's response was that he had gotten busy. Complainant continued to ask him for more specific information regarding this alleged incident and he said that he could not recall anymore details. Complainant also requested that Mr. Evans not attach the August 18 memo to her PMP because she was not reprimanded due to the allegations. However, Mr. Evans refused the request and the memo was attached to Complainant's file.

Due to allegations made by Ms. Chris Fields in the letter dated August 18 regarding Complaint's violent behavior in the workplace, Complaint was referred to Dr. Carol C. Kleinman for a medical evaluation which would be used to determine Complainant's mental capability to perform her job duties. Complainant's ability to perform her job in a safe manner without endangering the safety of her co-workers was also questioned by Ms. Fields.

On or about August 7, 2006 Complainant went to the Federal Reserve Nurses Unit feeling sick and was excused for the day to go home. While in the Nurses Unit, Complainant spoke with Dr. Kanjarpane and expressed feelings of stress and being overwhelmed due to her work and the EEO lawsuit. Complainant also told Dr. Kanjarpane that she had been relocated to a new position in the Accounting Department of RBOPS and that she was having a difficult time adjusting to the new position and the training. The following day Complainant received a phone call from Ms. Rena Carlton stating that Complainant would be placed on administrative leave and that a letter would be sent to her in the next few days containing further details. Complainant received both letters from Ms. Fields and Mr. Evans dated August 18, 2006 via Fed Ex. Complainant believes that Employee Relations and RBOPS Management team conspired against her after receiving a call from Dr. Kanjarpane regarding his discussion with Complainant and decided to place her on leave. Complainant also believes that she was placed on leave as a result of Ms. Fields learning of the alleged violence that Complainant was exposed to during her childhood. As a result of this information, Ms. Fields attributed the violence Complainant experienced during her childhood to her actions as an adult in the workplace.

As a result of these allegations, Complainant was placed on administrative leave on August 8, 2006 causing Complainant's Board ID to be revoked. As a result, Complainant was not allowed access to the Federal Reserve Credit Union and was unable to gain access to her financial records or banking transactions. In the letter from Ms. Fields, Complainant was told to seek a psychiatric evaluation or she would face possible termination. As a result of this letter, Complainant felt threatened by the possibility of being reprimanded or her employment being terminated. Complainant did not choose to see a psychiatrist, but felt that she was forced to do so. Complainant met with Dr. Carol C. Kleinman on September 18 and September 21, 2006. After evaluating Complainant, Dr. Kleinman reported back to Ms. Fields on October 3, 2006 that Complainant was mentally fit to perform her job duties. After receiving Dr. Kleinaman's initial report, Ms. Fields refused to accept Dr. Kleinman's findings and sought to have Dr. Kleinamn classify Complainant as a "dangerous individual." However, On October 16, 2006, Dr. Kleinman sent an addendum further stating that Complainant was not a dangerous or violent individual. Complainant feels that Ms. Fields refusal to accept the first evaluation was a retaliatory act.

Complainant was requested to return back to work on October 19, 2006. After returning back to work and receiving her PMP Complainant was told that she could not take off from work for leave without pay for any medical reason, unless it was FMLA. Upon her return Complainant encountered a hostile work environment and escalating stress. In addition, Complainant had various doctor's appointments and medical issues which needed attention. As a result of the many different factors Complainant submitted her resignation on November 6, 2006, which she felt compelled to do under the pressures exerted upon her at her workplace.