UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
TINA M. CHANDLER                    )
                                    )
            Plaintiff,              )
                                    )
                                    )    Civ. No. 06-2082(EGS)
       v.                           )
                                    )
BEN S. BERNANKE,                    )
CHAIRMAN OF THE BOARD OF            )
GOVERNORS OF THE FEDERAL            )
RESERVE SYSTEM,                     )
            Defendant.              )
_____ )

## MEMORANDUM OPINION

This case involves an employment dispute between plaintiff Tina Chandler and her former employer, Mr. Ben Bernanke, Chairman of the Board of Governors of the Federal Reserve System ("The Board"). Ms. Chandler alleges violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, ("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 633a, *et seq.* ("ADEA"), and the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"). Pending before the Court is Defendant's Motion to Dismiss and for Summary Judgment. Upon consideration of the Motion, the response and reply thereto, and the applicable law, and for the reasons set forth in this Memorandum Opinion, Defendant's Motion is **GRANTED IN PART AND DENIED IN PART.**

I.  BACKGROUND

Plaintiff Tina Chandler is an African American woman who was 49 years old at the time she initiated this lawsuit.  Plaintiff was employed by defendant as a Staff Assistant with a pay grade level of FR-35 from her hiring in 1998 until her resignation on November 6, 2006.  She worked at defendant's Washington, D.C. office.  Plaintiff alleges that during the course of her employment she was discriminated against on the basis of her race and color in contravention of Title VII, and also discriminated against on the basis of her age in violation of the ADEA.  Plaintiff further alleges that she was retaliated against for engaging in protected Equal Employment Opportunity ("EEO") activity.  Finally, plaintiff contends that defendant unlawfully interfered with her right to take medical leave in violation of the FMLA.  Compl. ¶ 5.

In or around 1998, plaintiff was hired by defendant for the position of Staff Assistant in the Division of Reserve Bank Operations and Payment Systems ("RBOPS").  At that time, plaintiff's supervisor was Jack Dennis, Assistant Director for RBOPS, and plaintiff's pay grade level was FR-35.  At her 1999-2000 performance review, Mr. Dennis gave plaintiff an "outstanding" performance evaluation.  In 2000, Mr. Dennis recommended that plaintiff be promoted to Staff Assistant grade level FR-36.  Plaintiff alleges that Ms. Louise Roseman, Director

of RBOPS, denied plaintiff that promotion and changed plaintiff's evaluation from "outstanding" to "commendable," a decrease of one level on the scale of five ratings.  *Id.* ¶¶ 24-25.

In December 2000, Plaintiff filed a formal complaint ("December 2000 EEO Complaint") with the Equal Employment Opportunity ("EEO") Office of the Board alleging that she was unlawfully denied a promotion on the basis of her race.  *Id.* ¶ 29.  Plaintiff's December 2000 EEO complaint was resolved by a settlement agreement between the parties signed by plaintiff on March 23, 2001.  *Id.* ¶ 35.  In accordance with the settlement agreement, Louise Roseman was to replace plaintiff's 1999-2000 performance evaluation indicating a rating of "commendable" with the original evaluation made by Jack Dennis giving Plaintiff a rating of "outstanding."  Settlement Agreement, Def.'s Mot., Ex. B at 3.

The settlement agreement includes the following introductory language:  "Ms. Chandler agrees that she fully understands all of the terms of this Agreement and that it fully settles the claims in her formal EEO complaint and all claims which could have been raised up through the date on which she signs this agreement." *Id.*  Paragraph 6 of the agreement further states:

> "Upon signing this Agreement, Ms. Chandler will
> withdraw, in writing, her formal EEO complaint which
> she filed on December 13, 2000.  Ms. Chandler agrees
> that she will not pursue that complaint in any other
> way or any other issues which could have been raised in
> that complaint.  This waiver does not prevent Ms.

3

> Chandler from filing a complaint about anything that
> occurs after the Agreement is signed.  All outstanding
> issues that have arisen between the time the formal
> complaint was filed and the time Ms. Chandler signs
> this Agreement or that could have been raised are also
> hereby waived."

*Id*. at 4.

The agreement also states that "If Ms. Chandler believes the terms of this Agreement have not been complied with, within 30 days of the alleged violation of this Agreement, she shall notify the Board's EEO Programs Director in writing."  *Id*. at 5.  Plaintiff alleges that she learned in 2005 that defendant did not change her 1999-2000 performance evaluation to reflect her original "outstanding" rating by Jack Dennis in accordance with the settlement agreement.  Compl. ¶¶ 38-39.

In 2001, Bud Martindale replaced Jack Dennis as plaintiff's Supervisor.  *Id.* ¶ 40.  While working for Bud Martindale, plaintiff claims she did not receive sought-after promotions to grade level FR-36 in 2001, 2002, or 2003.  *Id.* ¶ 42.  After Bud Martindale's departure in 2004, the RBOPS Assistant Director position remained open until mid-2006.  *Id.* ¶¶ 44-45.  During this time, plaintiff reported to Paul W. Bettge, Associate Director of RBOPS, and plaintiff's immediate supervisors were Jeannine Szostek and Jo Chang.  *Id.* ¶¶ 46-47, 51.  Plaintiff alleges that she was subjected to continued discrimination and a hostile work environment during her time working for Szostek and

4

Chang.  Plaintiff also alleges that during this time she was denied a promotion in 2004 and 2005, and that she was denied a cash award in 2004 given to all other staff members who worked on a Bank Evaluation Project with Plaintiff.  *Id.* ¶¶ 53, 56, 124, 126.

On October 17, 2005, Ms. Chandler contacted the Board's EEO Office and indicated that she intended to file another EEO complaint alleging discrimination on the basis of race, color, and age and retaliation for her previous EEO activity in December 2000.  Compl. ¶ 61.  On January 3, 2006 Plaintiff filed her second formal EEO complaint ("January 2006 EEO Complaint"). Plaintiff also alleges that adverse actions were taken against her throughout 2006 as retaliation for the filing of the January 2006 EEO Complaint.  *Id.* ¶¶ 74, 78-79.  This includes an event referred to by both parties as "the gummy bear incident" in which Jo Chang allegedly "thrust" a hand full of gummy bears at plaintiff's face and commanded her to "eat it."  *Id.* ¶¶ 91-92.

On September 8, 2006, the Board issued a Final Agency Decision regarding the January 2006 EEO Complaint, finding that plaintiff had not been discriminated against on the basis of her age, race or color, or retaliated against for having previously filed the December 2000 EEO Complaint.  Def.'s Mot., Ex. A at 1.

Plaintiff further alleges that the discrimination and hostile work environment to which she was subjected caused her

5

physical injury for which she required medical leave.  *Id.* ¶¶ 106- 107.  Plaintiff contends that defendant interfered with the FMLA accommodations to which she was entitled.  *Id.* ¶¶ 136-38.

On November 6, 2006, Plaintiff resigned from her position at RBOPS because of an "escalating, stressful and adverse work environment."  Def's Mot., Ex. K.  On December 6, 2006, plaintiff filed the action before this Court.

Specifically, plaintiff alleges that defendant violated Title VII by unlawfully retaliating against plaintiff after the filing of her EEO complaints (Count I), violated Title VII by denying promotions based on plaintiff's race and by subjecting plaintiff to a hostile work environment (Count II), violated the ADEA by denying promotions based on plaintiff's age (Count III), and violated the FMLA by interfering with plaintiff's right to take medical leave (Count IV).  *Id.* ¶¶ 112-38.

Subsequent to the filing of this action, on January 24, 2007 plaintiff filed a third EEO complaint ("January 2007 EEO Complaint") complaining of continued discrimination and retaliation for the filing of the January 2006 EEO Complaint.  Def.'s Reply, Ex. 1.

Defendant has filed a Motion to Dismiss and for Summary Judgment, and contends that plaintiff's claims are either barred by the 2001 settlement agreement, barred for failure to timely exhaust her administrative remedies, subject to summary judgment

for failure to make out a *prima facie* case of discrimination, or subject to dismissal for failure to state a claim.

## II.  ANALYSIS

### A.  Statutory and Regulatory Framework

#### 1.  Title VII and the ADEA

Section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, provides that all personnel actions affecting federal employees shall be made free from discrimination based on race, color, religion, sex, or national origin.  The Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 633a, proscribes discrimination based on age against federal employees aged 40 and over.  Federal Reserve Board regulations set out procedures for administrative processing of individual complaints of discrimination under Title VII and the ADEA.  12 C.F.R. §§ 268.103-109.  These regulations require any person who believes he or she has been discriminated against in violation of either Title VII or the ADEA to contact an EEO counselor within 45 days of the date of the alleged discriminatory event in order to try to resolve the matter informally.  *Id.* § 268.104(a).  If informal counseling fails to resolve the issue, the aggrieved person may file a formal administrative complaint within 15 days of receiving notice from the EEO counselor of the end of the counseling period.  The Board is required to conduct an impartial

and appropriate investigation of the complaint within 180 days of the filing of the complaint unless the parties agree in writing to extend the time period. *Id.* § 268.105. After the investigation, the complainant has the option of requesting a hearing before an administrative law judge or an immediate final decision from the agency. The final decision shall consist of findings by the Board on the merits of each issue in the complaint, or, as appropriate, the rationale for dismissing any claims in the complaint and, when discrimination is found, appropriate remedies and relief. If the complainant is not satisfied with the agency's final decision, she may file a civil action in Federal District Court within 30 days of receipt of the notice of final action by the agency. *Id.* §§ 268.108-109.

### 2. The Family Medical Leave Act ("FMLA")

The FMLA allows private and federal employees to take up to twelve weeks of approved leave during a twelve-month period for certain enumerated circumstances, including a serious medical condition. 5 U.S.C. § 6382(a)(1). Title II of the FMLA governs actions relating to federal employees with more than 12 months of service.

### 3. Standard of Review

Defendants move to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In ruling on

8

this motion, the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Taylor v. FDIC*, 132 F.3d 753, 761 (D.C. Cir. 1997). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007); *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." *Swierkiewicz v. Sorema*, 534 U.S. 506, 515 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Defendants also move for summary judgment. Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if the pleadings on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. Rule 56(c). Material facts are those that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In considering whether

there is a triable issue of fact, the court must draw all reasonable inferences in favor of the non-moving party. *Id.*

    **B.**    **Plaintiff's Claims**

        **1. Pre-March 2001 Discrimination and Retaliation Allegations**

The doctrine of *res judicata* precludes a party from relitigating a claim on which final judgment was previously reached. An agreement between the parties dismissing all claims is the equivalent of a decision on the merits and thus claims settled by agreement are barred by *res judicata*. *See Johnson v. Ashcroft*, 445 F. Supp. 2d 45, 50 (D.D.C. 2006). On March 23, 2001, plaintiff signed a settlement agreement with defendant which expressly settled "the claims in her formal EEO complaint and all claims which could have been raised up through the date on which she signs this agreement." Def.'s Mot., Ex. B. The complaint in this action alleges that plaintiff was denied a promotion "repeatedly each year since 2000." Compl. ¶ 119. Defendant argues, and plaintiff concedes, that any allegedly discriminatory action taken by defendant prior to March 23, 2001 is barred by the express terms of the agreement. Def.'s Mot. at 14, Pl.'s Opp'n at 10. Plaintiff alleges in her complaint that defendant did not honor the settlement agreement because her 1999-2000 performance evaluation was never changed from

"commendable" to "outstanding."  Compl. ¶ 39.  Defendant argues that this claim is also barred because plaintiff did not bring the breach to the Board's attention within 30 days, as the agreement required.  In fact, plaintiff did not allege the agreement had been violated until 2005.  As in *Johnson*, plaintiff has not explained the significance of the alleged breach, nor does she show that the breach was fraudulently concealed or that she could not have discovered it with due diligence. 445 F. Supp. 2d at 50.  The Court agrees with defendant that this claim is also barred by *res judicata* and therefore **GRANTS** defendant's motion to dismiss plaintiff's claims of discrimination or retaliation based on conduct occurring before March 23, 2001 and defendant's alleged breach of the settlement agreement.

    **2. Pre-September 2005 Discrimination and Retaliation Allegations**

Plaintiff alleges several discrete acts of discrimination based on her age and race, as well as retaliation for prior EEO activity.  Specifically, plaintiff alleges that she did not receive a cash award that others received in 2004 and that she was unlawfully "denied a promotion every year since 2000" based on unfairly low performance evaluations.  Defendant argues that all of plaintiff's claims of discrimination or retaliation based on alleged discrete employment actions occurring before September

2005 must be dismissed as untimely for plaintiff's failure to exhaust her administrative remedies.

Plaintiff claims that she was not required to exhaust her administrative remedies on all EEO complaints, but rather only on her December 2000 EEO Complaint, which was ultimately settled by the 2001 settlement agreement. Plaintiff argues that the subsequent non-promotion in 2001 through 2005 and the failure to receive a cash award in 2004 were all retaliatory acts for the filing of the December 2000 EEO Complaint and that administrative exhaustion is not required for retaliation claims. This argument was rejected by the Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002). There, the Court clearly stated that

> discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the [statutory time period] after the discrete discriminatory act occurred.

*Id.* at 113. The Court made clear that this rule applies to retaliation as well as discrimination claims, concluding that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and *each retaliatory adverse employment decision* constitutes a separate actionable unlawful employment practice." *Id.* at 114 (emphasis added). Therefore,

under *Morgan*, plaintiff was required to exhaust administrative remedies for all of the discrete discriminatory acts of which she complains. *See More v.* Snow, 480 F. Supp. 2d 257, 270 (D.D.C. 2007); *Prince v. Rice*, 453 F. Supp. 2d 14, 24 (D.D.C. 2006).

Viewing the complaint in the light most favorable to the plaintiff, her first contact with an EEO counselor after the resolution of her December 2000 EEO complaint was on October 17, 2005. Compl. ¶ 61. Because the plaintiff was required to report any discrete discriminatory action or event within 45 days of the occurrence, Ms. Chandler has only exhausted her administrative remedies for events that took place on or after September 2, 2005. 29 C.F.R. § 1614.105(a)(1). As a result, defendant's motion to dismiss is **GRANTED** as to plaintiff's claims of discrimination and retaliation in the form of failure to promote in the years 2001, 2002, 2003 and 2004, and her claim of discrimination and retaliation in the form of failure to give plaintiff a cash award in 2004.

### 3.  Plaintiff's 2005 Non-Promotion Claim

The only remaining claim of a discrete employment action before the Court is plaintiff's timely filed and administratively exhausted claim alleging unlawful non-promotion in 2005. Defendant moves for summary judgment on this claim, contending that plaintiff has failed to make out a *prima facie* case of discrimination based on race, color, or age.

Summary judgment may be granted only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also *Liberty Lobby, Inc.*, 477 U.S. at 247; *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006). In the instant case, however, there are no "depositions, answers to interrogatories, and admissions on file"-all of which are anticipated by Rule 56(c)-because discovery has not begun. *Breen v. Peters*, 474 F. Supp. 2d 1, 7 (D.D.C. 2007). Often, "summary judgment motions [are] premature until all discovery has been completed." *Id.* (quoting *City of Rome v. United States*, 450 F. Supp. 378, 384 (D.D.C. 1978)). Summary judgment is premised on the notion that parties will have had "adequate time for discovery" to establish whether a genuine issue of material fact exists. *Celotex Corp.*, 477 U.S. at 322; *see also Liberty Lobby*, 477 U.S. at 257 (stating that plaintiff must have "a full opportunity to conduct discovery"). A plaintiff is not required to establish a *prima facie* case at the pleading stage, nor is a plaintiff required to defend against a motion for summary judgment without first having had the benefit of discovery. *Breen*, 474 F. Supp. 2d at 8. "Before discovery has unearthed relevant facts and evidence, it may be difficult to define the precise formulation of the

required *prima facie* case... Given that the *prima facie* case operates as a flexible evidentiary standard, it should not be transposed into a rigid pleading standard for discrimination cases." *Swierkiewicz*, 534 U.S. at 507.

Because plaintiff has not yet had the opportunity to engage in discovery, defendant's motion for summary judgment pertaining to plaintiff's 2005 non-promotion claim is **DENIED**.

### 4. Hostile Work Environment Claim

Plaintiff claims that she was subject to a hostile work environment from 2000 through her resignation in 2006, and that she resigned due to "the escalating, stressful and adverse work environment." Def's Mot., Ex. K. Viewing the complaint in the light most favorable to the plaintiff, it appears that plaintiff alleges both that the hostile work environment was in retaliation for her 2000 EEO activity and also based upon her race. Compl. ¶¶ 66, 120. Specifically, plaintiff alleges that she was subject to verbal harassment, yelling, and "humiliation and scolding" by her supervisors, invasion of her personal space, disparaging questions about her career, manipulation, deliberate under-evaluation, and the refusal of her managers to speak directly to her or assign her work directly. Compl. ¶¶ 43, 52(2)[1], 54(2), 55,

---

[1] Plaintiff's complaint has two paragraphs numbered with the numbers 51, 52, 53, and 54. The number in parenthesis indicates whether reference is made to the first or second paragraph numbered with any of the above numbers.

57, 64, 70, 93. She also claims she was excluded from a department wide meeting, had work withdrawn from her, and was subject to "more severe hostility and harassment" because she did not have a supervisor like other employees. Compl. ¶¶ 52(1), 52(2), 60, 66.

"Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct." *Morgan*, 536 U.S. at 115. Unlike "discrete acts" such as denials of promotion or termination, the "unlawful employment practice" that is a hostile work environment cannot be said to occur on any particular day. *Id.* "It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own." *Id.* Given this difference, the Supreme Court has explained that plaintiffs bringing hostile work environment claims are not subject to the same timely filing requirements imposed upon claims for discrete employment actions. *Id.* at 118. Defendant does not dispute that plaintiff's hostile work environment claim is timely filed and administratively exhausted in accordance with *Morgan*. However, defendant does contend that summary judgment is appropriate because plaintiff has failed to establish a *prima facie* case of hostile work environment based on race or retaliation for prior EEO activity.

The Court finds that plaintiff has alleged sufficient facts to survive a Motion to Dismiss.  As with plaintiff's non-promotion claim, the Court finds that defendant's Motion for Summary Judgment is premature because plaintiff has not yet engaged in any discovery.  Therefore, defendant's Motion for Summary Judgment on plaintiff's hostile work environment claim is **DENIED**.

### 5. Allegations of conduct post-dating the January 2006 EEO Complaint

Plaintiff has also alleged in her complaint certain adverse actions that took place after the filing of the January 2006 EEO Complaint.  Specifically, she alleges that after she filed this complaint, her managers did not speak to her, she was transferred to another section, denied promotions, denied appropriate medical leave and given a poor performance evaluation.  Pl.'s Opp'n at 17.  Plaintiff also contends that her personal space was invaded by Jo Chang (the gummy bear incident) and that her supervisors did not respond appropriately to her concerns regarding this and another supposed altercation, but instead forced her to undergo a psychiatric evaluation and go on administrative leave.  Compl. ¶¶ 96-100.  Plaintiff contends that these actions were in retaliation for the filing of the January 2006 EEO Complaint.  Several of these events are also the subject of a third formal

administrative EEO Complaint that plaintiff filed on January 24, 2007.

Defendant concedes that events occurring after the filing of a formal administrative complaint alleging hostile work environment may be considered when evaluating the claim without requiring exhaustion for each separate subsequent incident. Def.'s Mot. at 24, n.1 *(citing Evans v. Chao*, 2006 WL 297714 (D.D.C. February 7, 2006). Therefore, plaintiff's allegations of conduct taking place in 2006 pertaining to her retaliatory hostile work environment claim (such as the gummy bear incident, the medical leave allegations, and the handling of plaintiff's placement on administrative leave) are properly before the Court even though such allegations were not included in the formal administrative complaint upon which this Court's jurisdiction is based. The Court rejects defendant's later contention to the contrary, made in its Reply, that these same acts are not ripe for judicial review because they have not been administratively exhausted. Def.'s Reply at 12, n.1. These allegations are not of "discrete employment actions" that require separate exhaustion, but are rather part of a "series of separate acts that collectively constitute one unlawful employment practice." *Morgan*, 536 U.S. at 117.[2] Consequently, defendant's motion is

---

[2] While plaintiff's complaint does not allege any discrete employment actions in retaliation for the filing of her January 2006 EEO Complaint, she does allege in her opposition that she

**DENIED** with respect to allegedly retaliatory conduct constituting a hostile work environment that occurred after the filing of the January 2006 EEO Complaint.

### 6. Family Medical Leave Act Claim

Plaintiff claims that defendant interfered with her right to take medical leave under the FMLA. Compl. ¶ 138. The FMLA grants private and federal employees periods of leave for certain family or health related events. Title I of the FMLA governs private sector and federal employees with less than 12 months of service, 29 U.S.C. §§ 2601 *et seq*, and Title II pertains to federal employees with more than 12 months of service. 5 U.S.C. §§ 6381 *et seq*. "While both titles guarantee the same substantive rights, Title I expressly creates a private right of action to redress violations, whereas Title II does not." *Sullivan-Obst v. Powell*, 300 F. Supp. 2d 85, 99 (D.D.C. 2004)(citing *Gardner v. United States*, 1999 WL 164412, at *7

---

was "denied promotions." As explained above, the denial of a promotion is a discrete employment action. "*Morgan* requires a plaintiff to exhaust all administrative remedies for each 'discrete' incident of discrimination or retaliation that rises to the level of an unlawful employment practice." *More,* 480 F. Supp. 2d at 270. (citing *Prince*, 453 F. Supp. 2d at 24 (citing *Morgan*, 536 U.S. at 110-13))*. Morgan* also thus prohibits plaintiffs from filing subsequent similar claims in federal court without first exhausting administrative remedies. *Id.* Therefore, to the extent that plaintiff alleges discrete acts of retaliation that post-date the filing of her January 2006 EEO complaint that have not been administratively exhausted, these are not properly before the Court and are therefore dismissed.

(D.D.C. Jan. 29, 1999); *accord Russell v. United States Dep't of the Army*, 191 F.3d 1016, 1018-19 (9th Cir. 1999); *Mann v. Haigh*, 120 F.3d 34, 37 (4th Cir. 1997).  It is undisputed that plaintiff is a federal employee with more than twelve months of service.  Compl. ¶ 1.  Consequently, plaintiff is not covered by Title I of the FMLA and cannot avail herself of the private right of action found there.  Accordingly, plaintiff has failed to state a claim and defendant's Motion to Dismiss this claim is **GRANTED.**

### III. CONCLUSION

For the reasons articulated above, defendant's Motion to Dismiss is **GRANTED** as to plaintiff's claims of discrimination or retaliation based upon conduct occurring before March 23, 2001, defendant's alleged breach of the settlement agreement, plaintiff's non-promotion claims for 2001-2004 and failure to receive a cash award in 2004, and plaintiff's FMLA claim.  Defendant's Motion to Dismiss and for Summary Judgment is **DENIED** as to plaintiff's 2005 non-promotion claim and plaintiff's hostile work environment claims.  An appropriate order accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            January 30, 2008**